Oscar Valencia, Esq.  SBN 213747
PREMIER CRIMINAL DEFENSE
2655 Camino Del Rio N., Suite 400
San Diego, CA 92108
Tel. 619/432.1599

Attorney for Defendant
JOSE GOMEZ

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 20-CR-02957-TRW |
| Plaintiff, | |
| v. | **DEFENDNT'S SENTENCING MEMORANDUM** |
| JOSE ALFREDO GOMEZ, | Date: 3-12-2021 |
| Defendant. | Time: 9:00AM |

TO THE US GOERNMENT AND ITS REPRESENATIVES:

    The defendant, JOSE ALFREDO GOMEZ, by and through counsel, Oscar Valencia, files the following sentencing memorandum.

## I

## THE INDIVIDUAL BEFORE THE COURT

    Mr Gomez was a recently engaged man, with a pregnant fiancée, in need of making money when, he was approached by two gentlemen related to his father's girlfriend. The Job was a simple one, travel to Arizona for a pickup truck, bring it to California and earn an easy $500 (five hundred dollars).  Upon arriving in Phoenix Arizona Mr Gomez was told, he needed to

obtain a Temporary Permit in order to legally drive the truck out of Arizona. After Mr Gomez obtained the necessary paperwork the two gentlemen informed him that the truck was going to be used for importing drugs from Mexico into the United States of America. Mr Gomez was informed, that he would need to register the truck in his name, once he arrived in California. They further instructed him to cross the US border a few times to ensure the vehicle was mechanically sound and to establish a record of him driving that vehicle trough the US/Mexican Border.

They also made it clear, that they would pay him well for crossing over their drugs and that refusing to do so was not an option. Considering, that his father and younger brother reside in Tijuana, Mexico, Mr Gomez felt trapped. On the one hand he needed to make more money and on the other hand if he refused his family in Tijuana would be in danger. Mr Gomez was in essence trapped; he did, as he was told, registered the vehicle to his name, traveled to Tijuana several times to establish a driving pattern, and insured the vehicle was mechanically sound.

On one trip to Tijuana, while visiting his father, Mr Gomez received a phone call informing, him that someone would be picking up the truck. They informed him that they would call him once the vehicle was ready, and that if everything went well, they would pay him for his services. As promised, the truck was taken and once it was made ready, they called to inform him where he needed to pick up the vehicle. They wanted to meet near the US/Mexican Border, so that he could take the truck immediately into the United States.

Upon reaching the US Border, he was asked a series of questions and his vehicle was inspected by the Border Patrol Agent. Mr Gomez was instructed to go to secondary inspection where his vehicle was scanned. Subsequently, the Border Patrol Agents discovered several packages hidden in the trucks' gas tank. The packages were removed from the vehicle and tested positive for methamphetamine. Mr Gomez was arrested and interviewed.

Out of concern for his family Mr Gomez lied to the Border Patrol Agents. Mr Gomez was concerned that if he told the truth his family's lives would be in danger. Subsequently, Mr Gomez was interviewed by Probation, and after being assured everything he said would be confidential, Mr Gomez agreed to tell the truth.

## II.

## The Sentencing Guidelines Pursuant to the Plea Agreement

Mr. Gomez and the government agree on the preliminary guideline calculations in this case:

| | |
|---|---:|
| Base offense level [USSG §2D1.1]: | 38 |
| Reduced Base Offense for minor role: [USSG §2D1.1(a)(5)] | -4 |
| Specific Offense Characteristics: | |
| Importation of Methamphetamine [USSG §2d1.1(b)(5)] | +2 |
| Safety valve [USSG §§2D1.1(b)(18) and 5C1.2]: | -2 |
| Adjustment for Role in the Offense: | -2* |
| Adjusted Offense Level: | 32 |
| Acceptance of responsibility: | -3 |
| Total Offense: | **29** |
| Fast track departure: | -4 |
| Adjusted offense level: | <u>25</u> |
| Criminal history category: | I (0 points) |
| Guidelines Range: | from: <u>57</u> months |
| | to: <u>71</u> months |

At an adjusted offense level of 25, the initial guideline sentencing range is 57 to 71 months. Mr. Gomez makes the following additional requests.

**\*MINOR ROLE**: Everything the Defendant did was at the direction of others. The Defendant was originally only going to drive a car from Arizona to California. He soon found himself trapped into agreeing to import drugs into the US. They provided him with the vehicle, they ordered him to drive across the US border numerous times, prior to loading his vehicle with drugs, and eventually ordered him to drive a truck loaded with drugs into the United States from Mexico.

**\*\*VARIENCE:** Defendant respectfully request that the Court adopt the Government's recommendation of a 2-level reduction for Defendant's waiver of indictment during the judicial

emergency. **This variance results in an offense level of 27 and guidelines from 70 to 80 months.** Defendants respectfully request that the Court adopt the Governments recommendation for an additional 15-month variance under 18 USC section 3553(a) factors based on Defendants' lack of criminal history and history of gainful employment. Additionally, Defendant request that the Court consider that Defendant's decisions were largely influenced by fear and duress as described herein. Thus, Defendant respectfully request that this Court consider a 42 month prison sentence with 5 years of supervised release and a $100 fine.

### A. Duress Not Amounting to a Complete Defense

In drafting the Guidelines, the Sentencing Commission recognized there would be cases where a defendant's actions were motivated by serious coercion or duress. In such cases, even though the coercion or duress did not rise to the level of a complete defense, a departure may be warranted. As section 5K2.12 states, "If the defendant committed the offense because of serious coercion, blackmail, or duress, under circumstances not amounting to a complete defense, the court may depart downward."

Here, as stated above, Mr. Gomez's participation in this crime was based on serious threats of violence. Drug dealers are not known for being reasonable or considerate. Here was Mr Gomez in Arizona with two gentlemen that were not personally known to hm. All he knew was that they were related to his father's girlfriend. Unlike other defendants who may later claim that they were pressured into committing the crime, the evidence here supports his assertion. They specifically told him, "there is no turning back." His father and 8-year-old brother live in Tijuana, Mexico. As we all know, Tijuana is a lawless town where people are constantly murdered and disappear without a trace.

First, consider Mr. Gomez's character. Nothing in Mr. Gomez's background or history would suggest he would become involved in a drug smuggling offense. He is a well-regarded by those who know him (please see attached letters of recommendation). He has no prior criminal history. He does not have a drug or drinking problem, does not gamble, does not have a secret

second family. The numerous letters written by family and friends after his arrest provide ample evidence of his solid character, the last person one would expect to be involved in drug crimes.

The circumstances in Tijuana and the border substantiate a duress claim. Tijuana has suffered extreme violence at the hands of the drug trafficking organizations over the last several years, with murders, shoot-outs, and kidnappings occurring routinely. Also, as the borders become more secure, the drug traffickers have sought out other individuals who do not fit a drug courier profile to cross drugs into the United States, and they appear to be targeting individuals less likely to arouse suspicion at the border crossings.

It is true that Mr. Gomez pled guilty, which on its surface seems inconsistent with an assertion of duress. But given the stakes involved, it is understandable an individual would choose to plead guilty rather than risk a ten-year sentence, particularly given the difficulty of meeting the elements of a duress defense. *See,* e.g., Ninth Circuit Model Criminal Jury Instruction 6.5 (duress requires proof of "a present, immediate, or impending threat of death or serious bodily injury" and "the defendant had no reasonable opportunity to escape the threatened harm"). These two elements are particularly difficult in the context of a border bust, where jurors tend to believe that the defendant is no longer under threat of immediate harm when he is greeted by American border inspectors at the port of entry, and where jurors believe the same inspectors provide a reasonable opportunity to escape harm. Case law is in accord. <u>See United States v. Ibarra-Pino</u>, 657 F.3d 1000 (9 Cir. 2011) (affirming the district court's ruling that there was insufficient evidence of a prima facie showing of duress in a border bust case in San Diego to receive a duress jury instruction). Given the challenges of presenting a duress defense at trial, it is quite rational to expect that a defendant would forego trial.

Further, as stated above, there is a specific guideline provision for departures based on imperfect duress and coercion. All sentencing departures are predicated upon a finding of guilt. The fact that the guidelines include a specific provision for duress not amounting to a complete defense evinces an understanding that a cognizable percentage of defendants would be in shoes

DEFENDANT'S SENTENCING MEMORANDUM

similar to Mr. Gomez – legally culpable but worthy of mercy based on the fears and intense pressure that motivated their actions. The duress provision indicates coercion generally must involve a threat of physical injury or substantial damage to property to merit a departure. USSG § 5K2.12.

Moreover, the "extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercions, blackmail or duress involved, and the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be." *Id*. Here, Mr Gomez was told what the vehicle was going o be used for and "that there was no turning back."

In light of the pressure and threats against him, Mr. Gomez respectfully requests the Court to depart pursuant to § 5K2.12 down to a sentence that will allow him to rebuild his life. He urges the Court to depart and impose a prison sentence of 42 months.

### B. Combination of Factors Departure/Variance.

Separate from the duress departure, the Court should depart (or vary pursuant to the § 3553(a) factors) based on Mr. Gomez's age, documented work history and lack of criminal involvement. Mr. Gomez's mark on society has been overwhelmingly a positive one, a mark that stands in sharp contrast to this single act; he should not be defined by a single transgression, and the sentencing guidelines and 3553(a) factors empower the Court to ensure that all his positive contributions are appropriately recognized and accounted for at sentencing. During his time on bail, he worked as an essential worker making deliveries of goods to people's homes. Due to Covid most people relied on essential workers to bring them necessary items and avoid being exposed to Covid-19.

///
///
///
///
///

## II.

## Conclusion and Recommendation

Mr. Gomez accepts full responsibility for his decision. He had a choice to make and, as hard as it was to do at the time, he took what seemed to be the easy way out. He does not seek to justify his choice as the right one; he candidly admits he made the wrong decision. He should have gone to the authorities right away and faced up to the consequences for saying no. Based on his decision, he will be labeled a felon for the rest of his life. His reputation is forever damaged.

Mr. Gomez asks the Court to impose a sentence, one that will balance society's need for punishment and deterrence with the unique and mitigating circumstances of his life's good work and the events that led to his arrest and prosecution. He suggests a sentence to 42 months in custody. This time in confinement will be adequate to fulfill the goals of federal sentencing and will honor the overriding principle of justice.

Respectfully Submitted,

Dated: 3-8-21

Oscar Valencia, Esq.
Attorney for JOSE GOMEZ

March 3,2021

To Whomever it May Concern,

    Hello, my name is Alyssa Marie Vespia Reyes. I am Jose Alfredo Gomez's Fiancé. I am making this letter in regards of our daughter Josie Katt-Marie Gomez. I would like to share with you all how it has impacted our family with Jose not being physically here, and a little bit about who he is. To start, Jose and I are going on 2 years of being in each other's lives. When we first met he was truly a gentlemen, a kind hearted individual very well mannered. Him and I have been inseparable since, I was at a very rough patch in my life when we met battling an addiction with alcohol. Once I finally expressed myself to him he guided me through that challenging time allowing me to feel safe and become sober. Not only has he helped me through addiction, he also brought me to seek salvation through the World Mission Society Church Of God. Till this day we both had been very involved with our Church, even getting our daughter baptized in November 2020. Since he has been incarcerated he has made very great efforts to still bible study with members from our church and read on his own time. Without him home it is difficult for himself and us to grow in our faith let alone live our day to day life... We are in a difficult situation because he was taken into custody so soon we were unable to plan ahead so now I am paying off our rent which is a few thousand past due.. unable to qualify for certain benefits, and unable to recieve a payment from my county job. I am taking on that role of building our financial structure back all while being a stay at home mom. Jose was a huge financial provider for us because he was so hardworking, always getting overtime at his job even supporting me in my goals and working with me as a Financial Advisor. Apart from him being a hardworking provider for us in every way he is also a Father. He is a father to our daughter Josie who is now 7 months old. Our daughter is mine and Jose's blessing, him being incarcerated has impacted the bond between us all as a family. When she was born he would help me out in every way possible, if she was unable to sleep he would put her sleep, diaper changes, etc. I need Jose out here physically with us to not only be my Husband, Provider, Protector, but to be the father he is to our daughter. I hope that you may see our situation and give him another opportunity to come home to be my second pair of hands, Josie's Father, and for him to join us physically to keep the Church Festival's we celebrate this month and upcoming months. The dates for those

Festivals are Passover March 27th, Unleavened Bread March 28th and Resurrection Day April 4th, all are an extremely important factor in our life and faith. He has impacted my life positively so much in the past 2 years that not even any of my friends of 5 years plus have done. He has always been the backbone of our family, and with him being gone the backbone has turned into a hunch. Thank you for allowing me to share and May God Bless You.

Alyssa Marie Vespia Reyes, Josie Katt-Marie Gomez

March 3, 2021

*Alyssa Vespia Reyes*

December 1, 2020

To whom it may concern,

My name is Rudy Mosqueda, I have been Jose Alfredo Gomez's manager since March 9th, 2020. He has been an outstanding employee and person. He has been an integral part of the work environment and culture we have here at SBDI. I have come to him whenever we needed overtime or to cover a shift and he has always helped us out. Jose has never received a warning or any disciplinary action from this company as well. Jose has been missed and continues to be missed as we try to find a replacement that keeps up to his standard. If need any other information about Jose please do not hesitate to contact me.

Thank you,

Rudy Mosqueda

Operations Manager

SB Distribution LLC

626-494-3984

To whom it may concern,

I Natalie Gomez, have known Jose Gomez all my life. He is my little brother, my companion. Life been though for us all with this new life style we have to get use to, but Jose always made sure my kids and I had all the moral support we needed even tought I am older than him. I am a single mother of 3 kids, and he's been a dad figure for them, spending time and helping me watch my kids when I needed to work or I felt overwhelmed. We had over 4 passings in our family 6 months ago 1 each month, but one of them changed our lives for ever. Regardless of him having a newborn baby, he still took the time to make sure I did not feel alone or sad. We've been in our own since we were very young, my brother sister and I, our parents dont live in the U.S so the closest to our parents is ourselfs. We have eachother he is a wonderful human being I learned that it is human to make mistakes and yes only god knows what the heart holds and I know my brother has a heart of gold. I am blessed to have him in my life, I know the system and God will do what is best, and not everyone that makes a mistake deserves a harsh punishment, and in my heart I know he has asked god for forgiveness and will learn from his mistakes. Thank you

God Bless you all.

Natalie G.

Hello my name is Monica Gomez Perez. I am writing this letter to explain how Jose Gomez has impacted not only my life but others. Jose Gomez is my cousin but I see him more like a brother. He is a kind hearted, hard working man. We grew up together and throughout my whole life he always protected me like a sister he taught me how to be kind, respectful to everyone. He is a one of a kind type of person any one who knows him knows he is an amazing person. He now has a family and just had a little girl that really needs him aswell as a wife. I know he wants to take care of his wife and daughter he loves them everything he does is for his Family. He is a member in our family that is very loved, and important. He deserves another chance he has so much talent he needs to share with the world. I know life's not easy for anyone but he never gives up I know if he gets an opportunity he is going to make the best out of it. We need him, and love him!

Monica G. Roz